UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONALD LEE BEUTER,

                             Plaintiff,

                v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                           Defendant.
_____

**DECISION**
**and**
**ORDER**

**18-CV-06735F**
**(consent)**

APPEARANCES:          LAW OFFICES OF KENNETH R. HILLER, PLLC
                          Attorneys for Plaintiff
                          KENNETH R. HILLER, and
                          ANTHONY JOHN ROONEY, of Counsel
                          6000 North Bailey Avenue, Suite 1A
                          Amherst, New York  14226

                          JAMES P. KENNEDY, JR.
                          UNITED STATES ATTORNEY
                          Attorney for Defendant
                          Federal Centre
                          138 Delaware Avenue
                          Buffalo, New York  14202
                                  and
                          KATHRYN L. SMITH
                          Assistant United States Attorney, of Counsel
                          U.S. Attorney's Office
                          100 State Street
                          Rochester, New York  14614
                                  and
                          JUNE LEE BYUN
                          Special Assistant United States Attorney, of Counsel
                          Social Security Administration
                          Office of General Counsel
                          26 Federal Plaza – Room 3904
                          New York, New York  10278
                                  and

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

DENNIS J. CANNING and
SUSAN ELAINE MEEHAN
Special Assistant United States Attorneys, of Counsel
Social Security Administration
Office of General Counsel
601 East 12th Street
Room 965
Kansas City, Missouri  64106

## JURISDICTION

On October 7, 2019, the parties to this action, in accordance with a Standing

Order, consented pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned.

(Dkt. 14).  The matter is presently before the court on motions for judgment on the

pleadings filed by Plaintiff on April 22, 2019 (Dkt. 8), and by Defendant on June 21,

2019 (Dkt. 12).

## BACKGROUND

Plaintiff Ronald Lee Beuter ("Plaintiff"), brings this action under Title II of the

Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial

review of the Commissioner of Social Security's final decision denying Plaintiff's

application filed with the Social Security Administration ("SSA"), on May 4, 2015, for

Social Security Disability Income ("SSDI") under Title II of the Act ("disability benefits").

Plaintiff alleges he became disabled on January 15, 2015, based on coronary artery

disease, chronic obstructive pulmonary disease, chronic bronchitis, angina, lung

disease, and acid reflux.  AR[2] at 1107, 1129.  Plaintiff's application initially was denied

on September 10, 2015, AR at 1033-45, and at Plaintiff's timely request, an

_____
[2] References to "AR" are to pages of the Administrative Record electronically filed by Defendant on
February 20, 2019, in 14 parts.  (Dkts. 6 to 6-13).

administrative hearing was held on November 29, 2017, before Administrative Law Judge ("ALJ") Carl E. Stephan in Elmira, New York, with Plaintiff, represented by Joseph Paladino, Esq., appearing and testifying.  AR at 995-1017.

On March 2, 2018, the ALJ issued a decision denying Plaintiff's claim, AR at 936-51 ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council, AR at 1105-06.  On August 17, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  AR at 1-7.  On October 12, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On April 22, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 8) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 8-1) ("Plaintiff's Memorandum").  On June 21, 2019, Defendant moved for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. 12-1) ("Defendant's Memorandum").  Filed on July 12, 2019, was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED; and the matter is remanded for further proceedings consistent with this Decision and Order.

## **FACTS**[3]

Plaintiff Ronald Lee Beuter ("Plaintiff" or "Beuter"), born July 24, 1952, was 62 years old as of January 15, 2015, his alleged disability onset date ("DOD"), and 65 years old as of March 7, 2018, the date of the ALJ's decision. AR at 951, 999, 1107, 1129. Plaintiff is a high school graduate with two associate's degrees including in human resources and criminal justice. AR at 999, 1130. Plaintiff, who last worked on January 15, 2015, previously worked as a certified arson inspector with a municipal fire department, insurance surveyor, program manager, substitute teacher, therapy aid, and tool sharpener. AR at 130, 1001-03. Plaintiff most recently was employed as a substitute teacher and as a program manager where Plaintiff was responsible for interviewing clients seeking custody and visitation, requiring Plaintiff walk several times a day three blocks to and from his office to the courthouse. AR at 1002-03.

Since applying for disability benefits, Plaintiff has lived in a house with his wife, his wife's adult daughter and husband, and their three children (Plaintiff's grandchildren). AR at 916, 1140. Plaintiff's wife and grandchildren performed most of the household chores. AR at 1014. Plaintiff spends his days tending to his basic needs, including dressing himself and taking daily medications, preparing meals, interacting with his grandchildren, and resting. AR at 1140. Plaintiff prepares simple meals using the grill, oven and microwave, does laundry, makes simple household repairs, cares for a small pond, and takes out the trash, AR at 1142, but is unable to mow the lawn or shovel snow and must avoid extreme heat and cold. AR at 1013-14, 1143. Plaintiff has a driver's license, is able to drive, drives three times a week, and

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

goes shopping once a month for groceries, medication, clothing and gifts.  AR at 999, 1143.  Plaintiff regularly reads, watches television, cooks, goes fishing, visits with family, attends church, and goes to the library.  AR at 1010, 1144.

Plaintiff's disability benefits application is primarily based on a cardiac condition which Plaintiff has had since 1991, with angina diagnosed in 2015, and chronic obstructive pulmonary disease ("COPD").  AR at 1009, 1147.  Plaintiff maintains pain caused by his impairments first affected his activities in November 2013.  AR at 1147-48.  Since 2005, Plaintiff has had a heart attack, cardiac double bypass surgery and 11 stents implanted to manage his cardiac symptoms.  AR at 413, 1003-04.  In February 2002, Plaintiff commenced treatment with his treating cardiologist, Maurice E. Varon, M.D. ("Dr. Varon"), with the Sands-Constellation Heart Institute in Rochester, New York.  AR at 1007-08.  Plaintiff received treatment for his COPD from Geoffrey Wittig, M.D. ("Dr. Wittig"), his primary care physician since January 2001, who is in practice at Tri-County Family Medicine in Dansville, New York.  AR at 1009-10.

In connection with his disability benefits application, on August 25, 2015, Plaintiff underwent an internal medicine examination on a consultative based by Karl Eurenius, M.D. ("Dr. Eurenius"), who noted Plaintiff's history of heart disease since 1991 with a heart attack in 2010, receiving "approximately ten stents," most recently two in January 2015, and that Plaintiff could walk four blocks before becoming short of breath, and had chest pressure with one flight of stairs.  AR at 2071.  Dr. Eurenius diagnosed Plaintiff with recurrent arteriosclerotic cardiovascular disease with myocardial infarction and multiple stents with continued mild angina and shortness of breath with exertion, history of chronic bronchitis, gastroesophageal reflux disease, mental health issues, and recent

fractured left wrist with good return to function.  AR at 2073-74.  Dr. Eurenius indicated Plaintiff's prognosis was stable, and opined Plaintiff "is mildly limited in exertional activity due to coronary artery insufficiency and symptoms suggestive of angina and shortness of breath.  He is mildly limited in lifting and carrying, and handling objects with his left hand due to recent fracture left wrist."[4]  AR at 2074.

On a Cardiac Residual Functional Capacity Questionnaire completed by Dr. Varon on October 22, 2017, Dr. Varon reported treating Plaintiff since February 2002, for coronary disease and chronic chest pain diagnosed based on multiple angiograms. AR at 2542-47.  Plaintiff's symptoms included chest pain, anginal equivalent pain, shortness of breath, fatigue, weakness, edema, palpitations, and dizziness.  AR at 2542.  Angina episodes were accompanied by substernal chest pain radiating into the left arm with shortness of breath, nausea, and weakness.  AR at 2543.  Dr. Varon opined Plaintiff was not a malingerer, but was markedly limited with regard to physical activity even though comfortable at rest, and incapable of performing even low stress jobs because Plaintiff gets chest pain "all the time" which would be made worse by work stress.  AR at 2543.  According to Dr. Varon, Plaintiff frequently experiences his cardiac symptoms which were reasonably consistent with the symptoms and functional limitations Dr. Varon described.  AR at 2544.  Plaintiff's myriad of medications caused Plaintiff to be drowsy and fatigued and prognosis was poor.  AR at 2544.  Dr. Varon estimated Plaintiff could walk at most one city block without resting, could sit, stand, or walk for only 20 minutes at one time requiring a job permitting Plaintiff to sit or stand at will and to take unscheduled breaks.  AR at 2544-45.  In a sedentary work setting,

---

[4] Plaintiff does not claim disability based on his left wrist fracture.

Plaintiff would be required to sit with his legs elevated about waist level more than 50% of the time, could occasionally lift and carry less than 10 pounds, rarely lift and carry 10 pounds, and never lift and carry more than 10 pounds, AR at 2545, occasionally twist, stoop (bend), and crouch, rarely climb stairs, and never climb ladders.  AR at 2546. Plaintiff was to avoid all exposure to extreme cold and heat, avoid even moderate exposure to humidity, and avoid concentrated exposure to wetness and noise.  AR at 2546.  Dr. Varon further estimated Plaintiff would likely be absent from work more than four days per month, was not anticipated to undergo further testing to assess his impairments, symptoms and limitations because Plaintiff already underwent all the available tests, AR at 2546, and summarized that Plaintiff was very compliant with treatment and tried all available treatments, but "is plagued with a refractory [resistant to treatment or cure][5] chest pain syndrome [angina]."  AR at 2547.

On October 23, 2017, Dr. Wittig, Plaintiff's primary care physician since January 19, 2001, completed a Cardiac Residual Functional Capacity Questionnaire, reporting Plaintiff's diagnoses as cough variant asthma, coronary artery disease, GERD, chronic bronchitis, hypertension, depression, anemia, anxiety state, orofacial dyskinesia (involuntary movements of the mouth and face often associated with long-term use of certain medications), unstable angina, polyneuropathy, hyperlipidemia, chestwall pain following surgery, hypokalemia (low blood potassium), hypothyroid, and intercranial hypotension, noting such findings were based on multiple coronary angiograms, MRI/MRA of the brain, and various laboratory tests.  AR at 2549-54.  Plaintiff's symptoms included chest pain, fatigue, dizziness, headache, weakness, and orthostatic

---

[5] Unless otherwise indicated, bracketed material has been added.

hypotension (decreased blood pressure when standing compared to sitting or lying down). AR at 2549. Dr. Witting reported Plaintiff had exertional pain, was not a malingerer, and had marked limitation of physical activity demonstrated by fatigue, palpitation, dyspnea, and anginal discomfort. AR at 2550. Dr. Wittig described Plaintiff's medical condition as not stress-related but based on an underlying organic disease, and although the disease caused Plaintiff's emotional difficulties, Dr. Witting did not consider the emotional factors as contributing to the severity of Plaintiff's subjective symptoms and functional limitations, but opined Plaintiff's cardiac symptoms would frequently interfere with Plaintiff's attention and concentration. AR at 2550-51. Dr. Wittig estimated Plaintiff could walk less than one block without resting, sit for 30 minutes at one time, stand for 15 minutes, needed to shift from sitting to standing or walking at will, would need to take unscheduled breaks during an 8-hour workday, and needed to elevate his legs above hip level with prolonged sitting. *Id.* at 2551-52. Plaintiff could occasionally lift and carry 10 pounds or less, rarely lift and carry 20 pounds, and never lift and carry more than 50 pounds, AR at 2552, occasionally twist and stoop (bend), rarely climb stairs, and never crouch or climb ladders. AR at 2553. Plaintiff was to avoid all exposure to extreme heat, fumes, odors, dusts, gases, poor ventilation, and hazards, avoid even moderate exposure to humidity, and avoid concentrated exposure to extreme cold and noise. AR at 2553. Dr. Wittig further opined Plaintiff's impairments were likely to produce "good days" and "bad days," and indicated he would like Plaintiff to undergo an extensive neurology workup. *Id.* at 2553.

On October 17, 2017, Plaintiff was descending stairs when he had sudden onset left-sided weakness, numbness, and tingling. AR at 2605. Plaintiff presented to the

emergency department of Noyes Memorial Hospital in Dansville, New York, where Plaintiff was treated with tPA (tissue plasminogen activator for treatment of stroke caused by blood clot), and a CT scan showed no acute intercranial abnormalities. AR at 2555-97, 2606, 2608. Because Plaintiff continued to experience stroke symptoms including blurry vision, left arm and leg paresthesias, and facial tingling, he was transferred to Strong Memorial Hospital in Rochester, New York, AR at 2578-80, 2599, where Plaintiff was admitted to ICU for further monitoring. AR at 2602. An MRI showed no acute/subacute infarct, but revealed diffuse meningeal enhancement (enhancement of the membranes) and bilateral subdural hygromas (accumulation of fluid in the subdural space of the brain, usually associated with trauma), possibly attributable to recent falls, and intercranial hypotension. AR at 2612-13. Plaintiff was discharged on October 20, 2017, with instructions to follow up with Dr. Wittig and neurologist Michael Chilungu, M.D. ("Dr. Chilungu"). AR at 2615-16.

At the administrative hearing on November 29, 2017, Plaintiff estimated his heart condition caused angina, pain and fatigue rendering Plaintiff unable to exert himself or to walk more than half a block at a time. AR at 1008. According to Plaintiff, he stopped working at his program manager job because he was no longer able to walk the three to four blocks from his office to the courthouse to meet with clients several times a day. AR at 1008-09, 1012. Plaintiff is also supposed to keep his legs elevated above his heart when sitting. AR at 1009. Plaintiff further explained his COPD rendered him short of breath requiring use of inhalers several times a day. AR at 1009.

## DISCUSSION

## 1.    Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

**2.    Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI

benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable

regulations set forth a five-step analysis the Commissioner must follow in determining

eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v.*

*Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.

1982).  If the claimant meets the criteria at any of the five steps, the inquiry ceases and

the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

The first step is to determine whether the applicant is engaged in substantial gainful

activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b)

and 416.920(b).  The second step is whether the applicant has a severe impairment

which significantly limits the physical or mental ability to do basic work activities, as

defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if

there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part

404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and

meets the duration requirement of at least 12 continuous months, there is a

presumption of inability to perform substantial gainful activity, and the claimant is

deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§

423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth

step, however, if the impairment or its equivalent is not listed in Appendix 1, the

Commissioner must then consider the applicant's "residual functional capacity" or "RFC"

which is the ability to perform physical or mental work activities on a sustained basis,

notwithstanding the limitations posed by the applicant's collective impairments, *see* 20

C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the insured status requirements for disability benefits under Title II of the Act through June 30, 2018, AR at 941, has not engaged in substantial gainful activity since January 15, 2015, his alleged disability onset date, *id.*, and suffers from the severe impairments of asthma, chronic bronchitis, chronic obstructive pulmonary disease, coronary artery disease, gastroesophageal reflux disease, and hyperlipidemia, but does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, *id.* at 941-44, and that Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with additional limitations of occasionally climb stairs and ramps, never climb ladders or scaffolds, occasionally crawl, and avoid concentrated respiratory irritants, temperature extremes, and humidity. AR at 944-50. The ALJ further found at the fourth step of the five-step analysis that

Plaintiff remained capable of performing his PRW as a Program Manager, and did not proceed to the fifth step, *i.e.*, whether other work exists in the national economy that Plaintiff, in light of his RFC, remains capable of performing. AR at 950-51. Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act. *Id.* at 951.

In support of his motion for judgment on the pleadings, Plaintiff argues that in assessing Plaintiff's RFC at step 4 of the analysis, the ALJ erred in giving little weight to the opinions of Drs. Varon and Wittig, respectively, Plaintiff's treating cardiologist and treating primary care physician, Plaintiff's Memorandum at 13-18, while relying on the opinion of Dr. Eurenius, the consultative examiner, such that the ALJ's assessment of Plaintiff's RFC and ability to perform his PRW as a Program Manager is not supported by substantial evidence in the record. *Id.* at 18-21. In opposition, Defendant maintains the ALJ's RFC determination is supported by substantial evidence in the record, and is not based on an improper discounting of the opinions of Drs. Varon and Wittig. Defendant's Memorandum at 11-22. In reply, Plaintiff reiterates that the ALJ erred in evaluating the opinions of Plaintiff's treating physicians, Plaintiff's Reply at 1-2, and in relying on the consultative opinion of Dr. Eurenius. AR at 2-3. There is much merit to Plaintiff's arguments.

In particular, generally, the opinion of a treating physician is entitled to significant weight, but is not outcome determinative and only entitled to controlling weight when "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record.'" *Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed.Appx. 34, 35 (2d Cir. 2017) (quoting *Burgess*,

537 F.3d at 128, and 20 C.F.R. § 404.1527(d)(2)).  According to the *Burgess* factors,

the ALJ must first decide whether an opinion by a treating physician is entitled to

controlling weight.  *Burgess*, 537 F.3d at 128.  Where, however, the ALJ discounts a

treating physician's opinion, the ALJ must set forth "good reasons" for doing so.

*Burgess*, 537 F.3d at 129 (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).

The ALJ must "explicitly consider" the four *Burgess* factors, including "(1) the

frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence

supporting the opinion; (2) the consistency of the opinion with the remaining medical

evidence; and (4) whether the physician is a specialist."  *Selian v. Astrue*, 708 F.3d 409,

418 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129).  Here, despite recognizing both

Drs. Varon and Wittig as Plaintiff's long-term treating physicians, with Dr. Varon being a

cardiologist, AR at 949, the record establishes the ALJ, in granting the opinions of such

physicians "little weight" despite being well-supported by the medical evidence in the

record, AR at 949, violated the treating physician rule.

Significantly, the RFC assessments of both Dr. Varon and Dr. Wittig are

consistent with sedentary work, whereas the ALJ, based on the RFC assessment by Dr.

Eurenius, found Plaintiff could "perform a slightly reduced range of light work."  AR at

950.  Per the relevant regulations,

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one which involves sitting, a certain
> amount of walking and standing is often necessary in carrying out job duties.
> Jobs are sedentary if walking and standing are required occasionally and other
> sedentary criteria are met.

* * *

Light work involves lifting no more than 20 points at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(a) and (b).

In rejecting the opinions of Drs. Varon and Wittig limiting Plaintiff to less than the full range of sedentary work, the ALJ repeatedly focused on the fact that numerous physicians, including Dr. Varon and Justin M. Weiss, M.D. ("Dr. Weiss"), a pulmonologist, remarked that at rest, Plaintiff was in no acute distress. *See*, *e.g.*, AR at 945 (ALJ observing on February 15, 2015, Dr. Weiss found Plaintiff upon examination "in no acute distress (AR at 1275)); AR at 946 (ALJ observing Dr. Varon reported on August 13, 2015, Plaintiff, despite his extensive medical history of premature coronary artery disease, "was comfortable appearing at rest" (AR at 2139-40)); and AR at 947 (ALJ observed on January 7, 2016, Dr. Varon found Plaintiff "was comfortable appearing at rest" (AR at 2149-50)). The ALJ's reliance on such statements, however, is not supported by a fair reading of such records. In particular, with regard to these three examples, on February 15, 2015, Dr. Weiss noted Plaintiff "has severe coronary artery disease and has required multiple stents in the past with continued anginal symptoms." AR at 1273. Although Plaintiff's asthma and shortness of breath were "previously well controlled on inhaled corticosteroids, . . . for the past couple of years at least he has had at least 3 to 4 attacks of bronchitis." *Id.* Dr. Weiss described Plaintiff's bouts of bronchitis as "quite debilitating" as Plaintiff "develops worsened productive

cough with shortness of breath." *Id.* Dr. Varon's August 13, 2015 statement that

Plaintiff was "comfortable appearing at rest" followed his examination of Plaintiff on July

30, 2015, when Plaintiff reported "having more recent constellation of symptoms for at

least two months," including "a sense of unsteadiness which sounds much like

orthostasis," "chronically hypotensive" with orthostasis (decrease in blood pressure

upon standing that may cause fainting and injury), documented numerous times, has

developed "a shuffling type gait, some trouble with memory loss and . . . also had

involuntary jaw movements." AR at 2136-37. Dr. Varon's impression was that "[]his is a

very complicated situation for Mr. Beuter. I am a bit worried about him and share your

concerns. What is interesting is that today he was actually a little bit confused." *Id.* at

2137. On August 13, 2015, Dr. Varon emphasized that although Plaintiff was "doing

fairly well," and that Dr. Varon was optimistic Plaintiff's neurologic symptoms would

improve over time, Dr. Varon believed Plaintiff "has an element of autonomic

dysfunction" with Plaintiff's orthostasis described as "a longstanding chronic issue"

which is "severe enough that it is leaving [Plaintiff] in danger . . . ." AR at 2140. Dr.

Varon's January 7, 2016 statement regarding Plaintiff appearing comfortable at rest

follows Dr. Varon's observation that Plaintiff "continues to struggle with recurrent chest

pain," that "is very anginal sounding in nature," and although Plaintiff's "actual coronary

disease is under excellent control," Plaintiff's "circumstances remain quite complicated,"

with Plaintiff describing his pain "as a severe tightening, cramp like pain in the left

anterior precordium [anterior chest wall over the heart] which as it persists, begins to

radiate up his neck and into his jaw and then eventually down the left arm." AR at 2150-

51. Accordingly, despite remarking that Plaintiff appeared "comfortable at rest," these

physicians' findings do not at all suggest that Plaintiff would remain as comfortable upon any exertion.

With regard to the ALJ granting significant weight to the consultative opinion of Dr. Eurenius that Plaintiff "is mildly limited in exertional activity due to coronary artery insufficiency and symptoms suggestive of angina and shortness of breath," and "is mildly limited in lifting and carrying," AR at 948 (citing AR at 2074), not only is Dr. Eurenius's opinion from August 25, 2015, so remote in time as to be stale, *see Camille v. Colvin*, 104 F.Supp.3d 329, 343-44 (W.D.N.Y. 2015) ("medical source opinions that are 'conclusory, stale, and based on an incomplete medical record' may not be substantial evidence to support an ALJ finding." (quoting *Griffith v. Astrue*, 2009 WL 909630, at *9 n. 9 (W.D.N.Y. July 27, 2009)), but the very fact that Dr. Eurenius refers to Plaintiff as having "symptoms *suggestive* of angina," AR at 2074 (italics added), is completely inconsistent with the October 22, 2017 opinion of Dr. Varon, Plaintiff's treating cardiologist who had then been treating Plaintiff for more than 15 years, that Plaintiff, despite "trying everything" and being "very compliant" with treatment, is "*plagued* with a refractory chest pain syndrome [angina]," AR at 2574 (italics added), as well as the October 23, 2017 opinion of Dr. Wittig, Plaintiff's treating primary care physician since 2001, who listed Plaintiff's diagnoses as including, *inter alia*, "unstable angina." AR at 2549. This is also consistent with Plaintiff's testimony at the administrative hearing that his most significant symptoms of his heart condition included "fatigue, angina, not able to exert myself up and down stairs the way I used to, can't walk distances the way I used to more than a half block at a time." AR at 1008.

Furthermore, insofar as the ALJ relied on Plaintiff's statements on his disability benefits application Function Report, dated July 16, 2015, that his impairments did not impact Plaintiff's ability to lift, or sit, AR at 949 (referencing AR at 1145), Plaintiff's medical record is replete with subsequent reports establishing Plaintiff's medical condition continued to deteriorate, with Drs. Vanor and Wittig reporting, respectively, on October 22 and 23, 2017, that Plaintiff was significantly restricted in lifting, carrying and sitting, and Plaintiff testifying at the administrative hearing that he was unable to lift and carry more than five pounds, AR at 1013, can walk at most a block, AR at 1013, and needed to elevate his legs above his waist with prolonged sitting. AR at 1009-10. Moreover, the court's research reveals no caselaw, nor does Defendant reference any caselaw, supporting the novel idea that a disability claimant's personal statement that he is capable of greater exertional capacity than that approved by his long-term treating physicians, including a specialist practicing in the field of the claimant's primary impairment, should be elevated over the opinions of the treating physicians. Accordingly, the ALJ failed to adequately explain his reasons for not affording controlling or at least significant weight to the opinions of Drs. Varon and Wittig, and granting significant weight to a consultative opinion, in violation of the treating physician rule.

By failing to properly consider such opinions, the ALJ incorrectly assessed Plaintiff with the RFC for "a slightly reduced range of light work," AR at 950, whereas the opinions of Drs. Varon and Wittig are consistent with only a limited range of sedentary work. This error is not harmless because the ALJ also failed to obtain testimony from a vocational expert ("V.E."), which generally is required when a claimant is unable to

perform the full range of sedentary work. *See* SSR 96-9p,[7] 1996 WL 374185, at **6-7

(July 2, 1996) (calling for use of a V.E. where a claimant's limitations or restrictions

erodes the occupational base for a full range of sedentary work). Further, because

Plaintiff would be unable to perform his PRW as a Program Manager as Plaintiff

performed it, a V.E. is necessary to advise as to Plaintiff's ability to make an adjustment

to other work. *Id*. at * 7. Significantly, under the SSA's Medical Vocational Guidelines

or "Grids"), 20 C.F.R. Part 404, Subpt. P, App. 2, a claimant of Plaintiff's age (62 when

the disability benefits application was filed on May 4, 2015), education (high school

graduate or more), with skilled or semi-skilled PRW, would be considered not disabled if

such education provides for direct entry into skilled work, Grids Rule 201.05, regardless

of whether Plaintiff's skilled or semi-skilled skills are transferrable, Grids Rules 201.07

and 201.08, but would be considered disabled if his skills do not provide for direct entry

into skilled work and his skilled or semi-skilled skills are not transferrable. Grids Rule

201.06. Because these issues were not addressed by the ALJ, the ALJ's determination

that Plaintiff is not disabled is not supported by substantial evidence in the record.

---

[7] "SSR" is the acronym for Social Security Rulings which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. Such rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. 402.35(b)(1).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 8) is GRANTED; Defendant's Motion (Dkt. 12) is DENIED; the matter is REMANDED for further proceedings consistent with this Decision and Order, including a new administrative hearing with testimony from a vocational expert directed to whether Plaintiff remains capable of performing his PRW or other substantial gainful work that exists in the national economy. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        March 12th, 2020
                     Buffalo, New York